

**QUEENS COUNTY DISTRICT ATTORNEY**
125-01 QUEENS BOULEVARD
KEW GARDENS, NEW YORK 11415-1568

**MELINDA KATZ**
DISTRICT ATTORNEY

718.286.6000
WWW.QUEENSDA.ORG

August 29, 2025

Magistrate Judge Taryn A. Merkl
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: Estate of Jaythan Kendrick v. NYCHA, et al.
Docket: 1:23-cv-00358-NGG-TAM

Your Honor,

      We submit this letter in support of the motion of the Queens County District Attorney's Office (QDA) for a protective order in this civil proceeding until the completion of pending criminal litigation in the case People of the State of New York v. Allen Porter, Queens Co. Indictment No. 1182/1992 (the "Porter Criminal Case"). The motion seeks a protective order of extremely limited scope; to prohibit plaintiff from questioning a witness about the Porter criminal case. The District Attorney has the obligation, on behalf of the People of the State of New York, to protect the integrity of ongoing litigation involving Queens County prosecutions. We base the following on our review of the records and files of the QDA's Office and our correspondence with Mr. Edward Flores, counsel for defendants.

### FACTUAL AND LEGAL BACKGROUND

      At approximately 9:30 p.m., on December 30, 1991, in the Woodside Housing parking lot at 50-50 Broadway, in Queens County, defendant Allen Porter, a drug dealer in the Woodside Housing Projects, acting in concert with others, shot and killed rival drug dealer Charles Bland and Bland's girlfriend, Cherie Walker, as they sat in Charles Bland's green Volvo with Walker's four-year-old son, Melvin. In a hailstorm of bullets, Bland

sustained eighteen gunshot wounds, while Walker sustained four gunshot wounds. Melvin was uninjured.

Porter was convicted of two counts of Murder in the Second Degree (N.Y. Penal Law § 125.25[1]) and Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03). The Appellate Division, Second Department modified Porter's sentence and otherwise affirmed the judgment of conviction. *People v. Porter*, 256 A.D.2d 363 (2d Dept. 1998). The New York Court of Appeals denied Porter's application for leave to appeal to that court. *People v. Porter*, 93 N.Y.2d 976 (1999) (Levine, J.).

On or about October 6, 2000, Porter filed a petition for a writ of *habeas corpus* in the United State District Court for the Eastern District of New York. In an order dated December 7, 2005, District Court Judge Johnson adopted Magistrate Judge Pohorelsky's report and recommendation to deny the petition.

On or about November 13, 2023, Porter, through counsel, filed a motion to vacate the judgment pursuant to section 440.10 of the New York Criminal Procedure Law, in which he raised multiple claims. Porter thereafter filed several amendments to that motion, raising additional claims.

In a decision dated January 22, 2025, the Honorable Michelle A. Johnson, Supreme Court, Queens County, ordered a hearing on the motion, setting forth limited issues to be addressed. The parties agreed to a discovery schedule, which is ongoing at this time. The matter is currently on the calendar for December 8, 2025. Contrary to plaintiff's false and unsupported suggestion that the state criminal court's decision to hold a hearing was based on a finding of compelling evidence of misconduct, there has been absolutely no judicial finding of any misconduct or impropriety in the prosecution of Allen Porter.

## THE CURRENT MOTION

The QDA now moves this Court for a protective order to preclude questioning of Retired Detective Richard DeFilippis about the Porter case, which, as noted, is a criminal matter that is currently in litigation. The Porter case has no relevance to plaintiffs' present civil case, and allowing plaintiff to question Mr. DeFilippis about the Porter case will intrude on a pending and unresolved criminal case.

Notably, plaintiff would not be prejudiced by the minimal intrusion on the scope of discovery due to the protective order sought by the District Attorney's Office in this case. While Mr. DeFilippis and other NYCHAPD officers were apparently involved in investigating both the Kendrick and Porter matters, it is undoubtedly the case that Mr. DeFilippis and other NYCHAPD police officers were involved in investigating dozens if not hundreds of other cases as well. This motion does not seek an order preventing plaintiff about asking Mr. DeFilippis questions about any of these other cases. Critically, plaintiff

has not said why the Porter case, and not any of the dozens or hundreds of other cases that Mr. DeFilippis was involved in during his tenure with NYCHAD, is of such importance to their lawsuit.

Moreover, Mr. DeFilippis's role in the Kendrick case was minor. It was not his case. He is only listed in one DD5 out of ninety-six DD5s prepared in that investigation. Specifically, he is listed as being present in the second interview/interrogation of an eyewitness named Mario Aguilo.[1] NYCHAPD Detective John Reynolds prepared the DD5. Mr. DeFilippis had no recollection of the interview and reviewing the DD5 did not refresh his recollection. There is no underlying allegation of misconduct on Mr. DeFilippis's part. As to Mr. Kendrick, plaintiff alleges that NYCHAPD conducted a suggestive line-up, planted evidence in Kendrick's apartment, and filed false line-up and evidence vouchers. Plaintiff also casts doubt on the eyewitness statements obtained that were used to provide probable cause to arrest Kendrick. The main eyewitness, Brandon Rogers, was a minor at the time, and recanted his statement years later after lawyers working on behalf of Mr. Kendrick contacted him. But, in the Porter matter, there is no line-up at issue or any allegation of planting evidence, by anyone, and plaintiff has not explained why the Porter case, as opposed to all of the other NYCHAPD cases in which Mr. DeFilippis was involved, is sufficiently related to the Kendrick matter to warrant questioning.

As far as this civil case is concerned, it is the understanding of the QDA that Mr. DeFilippis is a purported fact witness in the civil proceeding regarding his role in the Kendrick investigation and the general practices of the NYCHAPD. This motion also does not seek to prevent plaintiff from asking Mr. DeFilippis about these issues.

Under Federal Rule of Civil Procedure 26(c), any person from whom discovery is sought may move for a protective order upon a showing of good cause. The QDA respectfully requests that the Court issue a limited protective order in this civil matter to prohibit plaintiffs from questioning Mr. DeFilippis about the Allen Porter case because, as noted, that criminal case is currently ongoing, with the next calendar date set for December.

"In a civil action, the Court has broad discretion to issue a protective order and stay discovery if the interests of justice so require. Provided good cause is shown, a protective order or stay may be warranted to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Abner v. Houston*, 2023 WL 4186319 (U.S. Dist. Ct., D. Utah 2023) (internal citation omitted). Factors the Court may consider in making this determination are: "(1) the extent to which the issues in the criminal

---

[1] In his first statement, Aguilo did not mention seeing Mr. Kendrick running away from the murder scene to his building with a pocketbook under his arm. In his second statement, he provided more details that implicated Mr. Kendrick. Plaintiff is trying to establish that Mr. DeFilippis somehow got Aguilo to talk and implicate Kendrick.

case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighted against the prejudice to plaintiffs caused by the delay; (4) the private interests and burdens on the defendants; (5) the interests of the courts; and (6) the public interest." *Id.* at *1.

An examination of these factors in light of the facts of this civil case and Porter's pending criminal case weighs heavily in favor of the court issuing a protective order to preclude questioning Mr. DeFilippis about the Porter criminal case. The plaintiff's case is not remotely dependent on the facts of the Porter case. There is no reason for plaintiff to question Mr. DeFilippis about matters related to the Porter case, because the Porter case has nothing to do with plaintiff's case. Indeed, plaintiff has made no showing that Mr. DeFilippis's role in the Porter case was in any way similar to his role in plaintiff's case so as to justify questioning Mr. DeFilippis about Porter.

To the extent plaintiff is seeking information about the general practices of the NYCHAPD during the time that Mr. Kendrick's case occurred, their case of course is not dependent on the facts of the Porter case – and to be sure, this motion does not seek to preclude plaintiff from asking Mr. DeFilippis about those general practices.

Significantly, precluding plaintiff from questioning Mr. DeFilippis about the Porter case will not prejudice his case in any way; Mr. DeFilippis will still be able to testify, to the extent he is able, about the general practices of the NYCHAPD during his tenure there, as well as his role in Mr. Kendrick's case. Indeed, he was deposed on such matters just yesterday.

Mr. DeFilippis can also testify about any of the dozens if not hundreds of other cases he was involved with during his tenure at the NYCHAPD. This motion seeks only to prevent plaintiff from questioning him about the one criminal case that remains pending: the Porter case. Granting the present motion will thus not delay the proceedings and may in fact speed them up by slightly limiting the scope of the questions Mr. DeFilippis can be asked.

In this kind of situation, where the witness is purportedly being deposed to testify about the practices of the NYCHAPD, and his limited role in a particular case, it is reasonable to wonder why plaintiff wants to question Mr. DeFilippis about one particular case that (a) appears to have no factual bearing on plaintiff's pending civil case and (b) is still an active and unresolved criminal case. While it is not obvious what that reason might be, there is a clear ulterior motive for him to ask Mr. DeFilippis about the ongoing Porter criminal case.

Any testimony by a witness about events that took place more than thirty years ago is likely to vary in small ways from one telling to the other. The only logical explanation

for plaintiff's eagerness to ask Mr. DeFilippis questions about the Porter criminal case – one that has nothing to do with this lawsuit – is to attempt to elicit testimony that they can share with Porter's attorneys so that Porter's attorneys have it in advance of the hearing in Porter's criminal case. This is an obvious tactic to use this civil case to secure discovery on matters totally unrelated to this civil case, but that may possibly, perhaps, be useful to Porter's attorneys in Porter's pending criminal case. This is far too tenuous a reason to support questioning Mr. DeFilippis about his role in the Porter criminal case given that the Porter case is ongoing.

Plaintiff effectively seeks permission to depose Mr. DeFilippis about an ongoing criminal matter despite the fact that that neither state nor federal rules allow for such a deposition. As discussed below, the Court should not approve this improper attempt to bypass the criminal discovery rules.

Finally, the public has an interest in preventing interference by outside parties in ongoing criminal proceedings. *See generally Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) ("The very fact that there is a clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities").

Indeed, "[f]ederal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution." *U.S. v. Kordel*, 397 U.S. 1, fn 27 (1970). Here, the QDA is not asking this Court to defer the civil proceedings. Rather, it merely seeks to preclude questioning Mr. DeFilippis regarding a limited criminal matter – the Porter case – which is still pending. Again, this narrow limitation on the questioning will not prejudice plaintiff's case in any way.

"A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain [discovery] he would not otherwise be entitled to for use in his criminal suit. Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other." *Campbell v. Eastland*, 307 F.2d at 487. *See also Cazaubon v. MR Precious Metals, LLC*, 2015 WL 4937888 (U.S. Dist. Ct., E.D. Louisiana 2015).

"In handling motions for a stay of a civil suit until the disposition of a criminal prosecution on related matters and in ruling on motions under the civil discovery procedures, a judge should be sensitive to the difference in the rules of discovery in civil and criminal cases. While the Fed. Rules of Civil Procedure have provided a well-stocked

battery of discovery procedures, the rules governing criminal discovery are far more restrictive. *Compare* Rules 26 through 37, Fed.R.Civ.P., 28 U.S.C.A. with Rules 15, 16, and 17, Fed.R.Crim.P., 18 U.S.C.A. Separate policies and objectives support these different rules." *Campbell v. Eastland*, 307 F.2d at 487. Additionally, there is very limited discovery in the context of a motion to vacate the judgment pursuant to section 440.10 of the N.Y. Criminal Procedure Law (*see* N.Y. Crim. Proc. Law § 440.10), and depositions are not allowed for discovery purposes under state law in a criminal case. *See* N.Y. Penal Law § 660.20.[2] *See also* Article 245 N.Y. Criminal Procedure Law.

In this situation, it is appropriate to preclude plaintiff from questioning Mr. DeFilippis regarding a single topic: his role in the Porter case. That is because that criminal case is still active. To allow plaintiff to question Mr. DeFilippis about the Porter case would improperly expand the limited scope of discovery in the ongoing Porter criminal litigation, in effect, giving Porter's attorneys deposed testimony from Mr. DeFilippis despite the fact that New York State criminal discovery practice does not permit witness depositions in a pre- or post-conviction context.

A party simply should not be allowed to do an end run around the criminal discovery rules by positing that it comes under the umbrella of a civil lawsuit stemming from a completely unrelated criminal matter that has terminated. *See Degen v. United States*, 517 U.S. 820, 826 (1996) (citing with approval decisions in the Courts of Appeals that have "sustained protective orders to prevent parties from using civil discovery to evade restrictions on discovery in criminal cases"); *see also In re Grand Jury Subpoena*, 866 F.3d 231, 235 (5th Cir. 2017) ("It is not necessary that the movant for civil discovery specifically intend to circumvent the rules of criminal discovery: a movant with the 'purest of motives' would, in the event the civil case was allowed to proceed, gain access to [discovery] otherwise unobtainable and, in so doing, potentially harm the related criminal investigation"). This is especially true here, where, as noted, there has been absolutely no finding of any police or other misconduct in the Porter case.

Thus, while relevance may not be a proper objection in a deposition, violation of the discovery rules is. Indeed, plaintiff has made no showing that "any matter of evidentiary value to his case will be obtained from his inquiry" into Mr. DeFilippis's role in the Porter case. *Smith v. Dowson*, 158 F.R.D. 138, 141 (U.S. Dist. Ct., D. Minn., 5th Div. 1994). Plaintiff argued unconvincingly that he wants to question Mr. DeFilippis about the Porter case to help establish a pattern of misconduct regarding the practices of the NYCHAD. Again, plaintiff has not said why the Porter case, and not any of the dozens or

---

[2] Section 660.20 of the N.Y. Criminal Procedure Law sets forth that: "An order directing examination of a witness conditionally must be based upon the ground that there is reasonable cause to believe that such witness: 1. Possesses information material to the criminal action or proceedings in issue; and 2. Will not be amenable or responsive to legal process or available as a witness at a time when his testimony will be sought, either because he is: (a) About to leave the state and not return for a substantial period of time; or (b) Physically ill or incapacitated."

hundreds of other cases that Mr. DeFilippis was involved in during his tenure with NYCHAD, is of such importance to their lawsuit.

Critically, as stated, there has been absolutely no finding of misconduct in the Porter case. The only reasonable explanation for plaintiff's intense interest in asking Mr. DeFilippis questions about the Porter case is to bypass the discovery rules of criminal litigation to gain information that Porter's attorneys can use and that is otherwise not obtainable at this point. The Court should not condone this. *See Heartbeat of Miami v. Jane's Revenge*, No. 8:23-CV-0705-KKM-AAS, 2023 WL 11056512, at *6 (M.D. Fla. Sept. 20, 2023).

In sum, the QDA respectfully asks the Court to issue a limited protective order to preclude plaintiff from questioning Mr. DeFilippis about the Porter case. The Porter case is a criminal matter that is currently in litigation. This protective order will not delay the civil matter or prejudice plaintiff's case. It is in the interest of the courts and parties to prevent the improper intrusion in an ongoing criminal case in Queens County that will also bypass the rules of discovery in a criminal case under the guise of it being necessary in a civil matter.

Respectfully,

A.D.A. Nancy Fitzpatrick Talcott
nftalcott@queensda.org

Roni Piplani by NFT

A.D.A. Roni Piplani
RCPiplani@queensda.org

cc: Edward A. Flores, Esq.
Krez & Flores, LLP
225 Broadway, Suite 2800
New York. NY 10007
eflores@krezflores.com

Joel B. Rudin
jbrudin@rudinlaw.com