# KREZ & FLORES, LLP

COUNSELLORS AT LAW
225 BROADWAY, SUITE 2800
NEW YORK, NEW YORK  10007-3018
Phone (212) 266-0400
Fax (212) 724-0011
E-mail: Mail@KrezFlores.com

**Edward A. Flores**
**Gregory Wilson**
**Karla R. Alston**
**Larisa Girsh**
**Jonathan D. Goldsmith †**
**Mark A. Taustine**

**Matthew E. Schaefer**
**Frank A. Melendez**

*Of Counsel*
**Paul Krez**

**Richard Montalvo**
**Christopher D. Acosta**
**Fiona McFarland**
**Francesca Fonzetti**
**Ahmed Toure**
**Marlon P. Rufino**
**Joel S. Ray**
**Daren P. Atkinson**

*Special Counsel*
**Karen S. Drotzer**
**N. Jeffrey Brown**

†Admitted in NY & NJ

August 29, 2025

Magistrate Judge Taryn A. Merkl
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY   11202

*Via ECF*

                  Re:   Estate of Jaythan Kendrick v. NYCHA, et. Al.
                      Docket:   1:23-cv-00358-NGG-TAM

Dear Judge Merkl,

     We file this letter motion of the New York City Housing Authority for a protective order in this matter pursuant to FRCP 26(b), FRCP 26(c)(1)(C), and/or FRCP 30(d)(3)(a), as the Court has informed us would be permitted, and per the pre-motion conference held with Your Honor on August 20, 2025 and Your Honor's subsequent order dated August 28, 2025.  The New York Housing Authority moves to preclude, and/or limit plaintiff from questioning Retired Detective Richard DeFilippis about a separate criminal matter, People of the State of New York v. Allen Porter, Queens Co. Indictment No. 1182/1992 or in the alternative to adjourn such deposition until after a pending criminal court hearing on December 8, 2025 is concluded.

     We join in the argument of the Queens District Attorney's Office that the deposition would be inappropriate due to the ongoing criminal proceedings in the Porter case, and the tenuous nature of plaintiff's argument that questioning Detective DeFillipis about the Porter matter would have any bearing on this matter.  See Exhibit 6.  It should be emphasized that in a deposition of Detective DeFillipis while the proceedings in the

Porter case are ongoing, this firm is not in a position to protect and defend the interests of the People of the State of New York, which are those interests that the District Attorney's office is concerned could be affected by such a deposition. We do not wish to waste the Court's time by regurgitating the information, authority and arguments set forth in the motion of the District Attorney's Office despite agreeing with their request for relief, and so we do not. However, we do point out the tenuous nature of the argument supporting plaintiff's right to conduct a deposition on this topic, and if the Court does allow the deposition to proceed at some point, we ask that its parameters be strictly confined.

FRCP 26(b) allows discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including…(C) forbidding inquiry into certain matters…." FRCP 26(c)(1)(C). A deponent or party may move to terminate or limit a deposition "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." FRCP 30(d)(3)(a). In this instance the defense asserts that good cause for such a protective order is appropriate as proceeding with the deposition now would cause annoyance and undue burden to the New York City Housing Authority, the People of the State of New York, and the witness, and is disproportionate to the needs of the case.

This case arises from a murder conviction of Jaythan Kendrick stemming from the murder of Josephine Sanchez on November 30, 1994. That conviction was vacated in 2020, after Mr. Kendrick had been imprisoned for over 25 years.

On November 30, 1994, Mario Aguilo was interviewed by Detective Gary Whitaker. The DD5 documenting the interview (Exhibit 1) indicates that Mr. Aguilo saw the victim lying on the ground, that when he walked over to her to see if she was alright he saw blood on the floor next to her and the woman did not appear to be breathing, that he left the location without calling the police, and that he could offer no further information.

On December 4, 1994, Mr. Aguilo was present in the PSA9 Squad room and interviewed by Detective John Reynolds and Detective DeFillipis. The DD5 documenting the interview was authored by Detective Reynolds, who has already appeared for a deposition in this case (Exhibit 2). That deposition was completed. At the 12/4/94 interview, Aguilo told the detectives that he was leaving after visiting his girlfriend Jennifer and saw a male black in his 30's wearing a green camouflage hat, white dirty waist length jacket, brown pants, no socks, and black or brown shoes. He said that this person was known to him as "JAY" from 23-02 34 Ave Apt#3F. He described Jay, said he knew him for 3-4 years and said Jay was running towards him fast; he said "what's up Jay" but Jay did not respond. Aguilo saw from behind that he was

carrying a black or brown pocketbook under his right arm, and Jay then ran into his building.  Aguilo said that he then started walking towards his own building and saw an old lady laying on her right side and saw blood near her head; he stopped and asked her if she was alright and there was no response.  He wanted to help her but he was afraid so he went home and when he came back out the police were there.  Evidence discovered years later cast doubts on the veracity of parts of both of Mr. Aguilo's statements.

      The only allegation regarding Detective DeFillipis, who used to be a defendant in this case but has since settled out, is regarding his employment (Amended Complaint (See Exhibit 5) ¶21[1]) and that he along with Detective Reynolds brought Aguilo to the precinct for further questioning on December 4, 1994 where they "knew that Aguilo was vulnerable to police pressure" and that "urged on by the detectives, who now had their sights myopically focused on Mr. Kendrick, Aguilo suddenly came up with an entirely new story."  (Amended Complaint ¶120-122; 124-125).  They also allege that the detectives wrote out a description of the perpetrator's clothing that was designed to match what Mr. Kendrick was wearing when they took him into custody.  (Amended Complaint ¶123); See Exhibit 4.  Allegations about a showing of a photograph to Aguilo (Amended Complaint ¶123) and regarding the preparation of the DD5 (Amended Complaint ¶125, et. Seq.) are not applicable to Detective DeFillipis, who documents show was not involved in either the photo ID or the preparation of the DD5.  (See Exhibit 2, DD5 prepared by Reynolds, and Exhibit 3, photo ID conducted by Reynolds).

      There does not seem to be any evidence of impropriety in the interview of Aguilo. Aguilo himself has never alleged that any impropriety occurred, nor has he recanted his statement.  Plaintiff seems to be positing that because a witness gave two statements which differed in that the witness had additional information to provide in the second interview, and that the veracity witness statements or parts thereof were later placed into doubt, there must *ipso facto* be police misconduct.  Without going too deeply into evidentiary issues more appropriate for a summary judgment motion and pleading deficiencies to be discussed in our motion to dismiss,[2] plaintiff should not be permitted to make wildly speculative allegations without any basis in fact or evidence and then use those allegations to justify an fishing expedition through discovery in hopes of uncovering an actual basis for a claim.

---

[1] The copy attached is the original complaint with redlines for the amendments made and incorporated in the Amended Complaint.
[2] Plaintiff has a pending motion to further amend the complaint.  The defense had indicated that it wishes to move to dismiss the Monell claims on the pleadings or otherwise to bifurcate the Monell claims from the other (state law) claims, but that briefing schedule was put on hold pending the determination of plaintiff's motion.  We note that this delay due to plaintiff's desire to amend the complaint is no fault of the defense but for the moment has left the defense without recourse (other than perhaps to a very limited extent through this application) to avoid discovery pursuant to what it feels are improperly pled claims as it waits to see which version of the complaint will be operative for its eventual motion to dismiss or in the alternative bifurcate the Monell claims.

     Although plaintiff in this action has attempted to plead a <u>Monell</u> (436 U.S. 658 (1978) claim based upon the alleged "use of excessive promises of rewards and unduly coercive or suggestive interrogation techniques with vulnerable potential witnesses, including drug users and addicts, drug dealers, and/or individuals fearing prosecution and imprisonment for their own criminal behavior," (Amended Complaint, ¶300(a)).

     While fact discovery about unrelated incidents can be a proper avenue for discovery in a <u>Monell</u> claim, all discovery must be reasonably related to the claim that has been brought. In this case, the defense does not think the plaintiff has done anything other than levy unsupported allegations without a scintilla of actual evidence. However, acknowledging that the scope of discovery is broad and that the Court may be inclined to allow inquiry in the context of a deposition, the scope of appropriate questioning still should be confined to the claim actually made.

     In this case, Detective Defillipis has already been deposed about the underlying facts, and Housing Authority Police Department policies, patterns and practices, and his own disciplinary records. He testified that he did not recall anything about the interview with Aguilo. What remains is an attempt to depose him about the unrelated Porter case. In a <u>Monell</u> claim, the policy, pattern or practice alleged must have resulted in a constitutional wrong in the particular case at issue. It is not enough to establish an unconstitutional policy without showing that said policy caused injury to this plaintiff. In this case, the plaintiff's allegations regarding the witness at issue (Defillipis) involve the taking of a statement from a witness. The defense agrees with the District Attorney's Office that the pending criminal proceedings justify a protective order, and also believes that the purely speculative nature of the allegation does as well. However, the questioning of Defillipis about the Porter case, if allowed at all, should be strictly confined to his questioning of witnesses in the Porter case to avoid unfettered probing into another matter about issues unrelated to the allegations in the plaintiff's complaint.

     The District Attorney's Office has stated that the pending hearing in the Porter criminal matter is scheduled for December 8, 2025. The time to complete fact discovery in this matter is currently January 30, 2026. Therefore, even a delay of this deposition until after the criminal court hearing can be completed well in advance of the fact discovery end date in this matter. Given the significant interests at issue in the criminal litigation and the limited bearing that the sought testimony would have on this matter, for the reasons stated in the motion by the District Attorney's office and those here, the defendant respectfully requests that the protective order to prevent, or in the alternative at least delay, the sought-after testimony should be granted.

                                        Very truly yours,

                                       *Edward Flores*
                                       Edward A. Flores

cc:

David E. Rudin (via ECF)
*Attorney for Plaintiff*

Ranjana Piplani (via email)
Assistant District Attorney
Queens District Attorney's Office
125-01 Queens Blvd
Kew Gardens, New York   11415
rcpiplani@queensda.org

Nancy Talcott (via email)
Assistant District Attorney
Queens District Attorney's Office
125-01 Queens Blvd.
Kew Gardens, New York   11415
nftalcott@queensda.org