# Exhibit 1

**Affidavit Draft Retired Detective Richard DeFilippis, New York City Police Department**

1. My name is Richard DeFilippis. I am a retired Detective in the New York City Police Department, and a resident of Florida.

2. I was employed by the NYC Housing Police Department (HPD) from 1982 through 1995, when the HPD merged with the NYPD. Thereafter, I was employed by NYPD until March 31, 2001, when I retired.

3. When I worked for the HPD, I was assigned primarily to the Woodside Projects and was familiar with the residents of those projects, including Vanessa Thomas, Allen Porter, Bland, and Nathaniel Wright. Vanessa Thomas and I had a cordial, respectful relationship and we often spoke about events that occurred in the Woodside projects.

4. On December 30, 1991, I was assigned to investigate the shooting homicide of Charles Bland (aka Tiz) and Cherrie Walker, which occurred in a parking lot at the Woodside Houses in Queens.

5. On April 23, 1992, I was called in to work during a regular day off because Jacqueline Aviles appeared at the Ravenswood Satellite Office of the HPD to discuss the shootings. My understanding at the time was that she had witnessed the shootings and could identify the shooters. Before I spoke to her, I did not know who committed the shootings and had no specific information that Allen Porter was one of the shooters.

6. Detective Anthony Budney, then also of the HPD, was present with me during that interview of Ms. Aviles. Neither he nor I threatened or coerced her in any way. Nor did we suggest that she identify Allen Porter as a shooter or otherwise being involved in the murders. Although Ms. Aviles was scared of the local drug dealers in the Woodside Projects, including Allan Porter, she was cooperative with Detective Budney and myself and told us what she had witnessed during the Bland/Walker shooting.

7. During the interview, Ms. Aviles named Allen Porter and Butt-Butt as the shooters and described other shooters who assisted them. At no time did she state that any of the shooters wore masks.

8. At the conclusion of the interview, Ms. Aviles identified a photograph of Allen Porter as one of the shooters.

10. On November 1, 1993, Lt. Maguire contacted me as I was in Florida visiting my mother and advised me that he had received information that the EPPD had located Vanessa Thomas, who we believed, at the time, had information about the shooting that she had not previously shared with us. Specifically, we knew that Ms. Thomas had beeped Porter before the murders.

11. In a form called a "49," Lt. Maguire and I sought and obtained authorization from HPD to travel to East Point, GA, where Ms. Thomas had been located. In that form, we specified the dates of our travel and hotel reservations. Specifically, Lt. Maguire and I booked and were authorized to fly down to Atlanta, GA on November 3, 1993, and to return the next day, November 4, 1993. However, as noted below, Wright was arrested on November 4th and waived extradition on November 5, 1993, which means the return flight was changed either to later on November 5th or to November 6, 1993.

12. We did not travel to Georgia on November 2, 1993. We were not in Georgia on November 2, 1993. We did not encounter Vanessa Thomas or Nathaniel Wright on November 2, 1993.

13. We arrived in East Point, GA on November 3, 1993. On November 4, 1993, we were assisted by a member of the East Point Police Department (EPPD) who drove myself and Lt. Maguire to where we believed Nathaniel Wright lived. We had a warrant to arrest Wright based on an open bench warrant on a pending drug case unrelated to the Bland/Walker murders. We knew that Vanessa Thomas was his girlfriend and would be with him.

14. At the above address, Lt. Maguire and myself spoke to the reception agent, who advised us that Wright usually whistled on his way home from work and that the whistle was audible from the lobby area. We listened for the whistle, then saw Wright. At that point, EPPD personnel arrested Wright on the New York

bench warrant and handcuffed him, as we had no jurisdictional authority to arrest Wright in Georgia.

15. At the time, Vanessa Thomas was in the apartment she shared with Wright. Lt. Maguire and I spoke to her and she agreed to accompany us to the EPPD to discuss the case. We did not arrest her and we did not handcuff her. We had no signed arrest warrant authorizing us to arrest her. We took Thomas and her children to get food, and she dropped the children off at a relative's home.

16. Once we arrived at the EPPD, we advised Ms. Thomas of her Miranda warnings, which she waived.

17. Thereafter, we discussed the murders and the events leading up to them, and she provided a written statement.

18. At the conclusion of the interview, Ms. Thomas was brought to pick up her children. She was never under arrest or charged with any crime.

19. I do not recall providing a letter to the EPPD from ADA Schaeffer, and I do not recall a letter indicating that he intended to prosecute her for the Bland/Walker murders.

_____  5/5/25
Richard DeFilippis          Date
Punta Gorda, Florida

_____
Notary Public

YOSHIE AIHARA
Notary Public - State of Florida
Commission # HH 524520
My Comm. Expires May 7, 2028
Bonded through National Notary Assn.

Sworn before me, this  5  date of June .

## Supplemental Affidavit Draft Retired Detective Richard DeFilippis, New York City Police Department

1. My name is Richard DeFilippis. I am a retired Detective in the New York City Police Department, and a resident of Florida.

2. This affidavit is submitted as a supplement to my initial affidavit dated May 5, 2024.

3. As stated therein, I was employed by the NYC Housing Police Department (HPD) from 1982 through 1995, when the HPD merged with the NYPD. Thereafter, I was employed by NYPD until March 31, 2001, when I retired.

4. When I worked for the HPD, I was assigned primarily to the Woodside Projects and was familiar with the residents of those projects, including Vanessa Thomas, Allen Porter, Charles Bland, and Nathaniel Wright.

5. Vanessa Thomas and I had a cordial, respectful relationship and we sometimes spoke about events that occurred in the Woodside projects.

6. Ms. Thomas was never an informant – either informal or a formal, registered informant -- for the Housing Police Department or for the NYPD. Nor did she ever receive any compensation or other consideration for any information she might have given me or any other police officer, either HPD or NYPD.

7. The nature of effective police work, especially in an insulated environment such as a housing project, like Woodside, where I predominantly worked, is to form cordial, trusting relationships with the community. I did that with Ms. Thomas and others.

8. I never told Nathaniel Wright or suggested to him – on the plane from Georgia to NY or any other time -- that if he did not cooperate, Vanessa Thomas would somehow "go down" or be liable for the Bland/Walker murders.

AUG 9 2024 PM 4:20
DA APPEALS BUREAU

_____  8-8-24
Richard DeFilippis           Date
Punta Gorda, Florida

Sworn before me, this 8 date of August, 2024

_____
Notary Public

CONSTANZA MONROY
Notary Public - State of Florida
Commission # HH 397877
My Comm. Expires Jul 24, 2027
Bonded through National Notary Assn.

QDA APPEALS BUREAU
AUG 9 2024 PM4:20