UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
────────────────────────────────
ESTATE OF JAYTHAN KENDRICK,

                Plaintiff,

      -against-

NEW YORK CITY HOUSING AUTHORITY,

                Defendant.
────────────────────────────────

**MEMORANDUM & ORDER**
**23-CV-0358 (NGG) (TAM)**

NICHOLAS G. GARAUFIS, United States District Judge.

On January 19, 2023, Plaintiff Estate of Jaythan Kendrick ("Plaintiff") initiated this action seeking monetary damages for the late Mr. Kendrick's unlawful prosecution and conviction for a murder he did not commit. In its initial and first amended complaints, Plaintiff named as Defendants the individual police detectives who investigated and the assistant district attorneys who prosecuted Mr. Kendrick. In these complaints, Plaintiff also named as Defendants the City of New York and the New York City Housing Authority ("NYCHA"). Plaintiff has since settled its claims against all Defendants except NYCHA.

Currently before the court is Plaintiff's fully briefed motion for leave to file a second amended complaint (the "Proposed Complaint"). (*See* Pl.'s Mot. for Leave to Am. Compl. ("Pl.'s Mot.") (Dkt. 60-1); NYCHA's Opp'n to Pl.'s Mot. ("NYCHA's Opp.") (Dkt. 60-5); NYCHA's Further Opp'n to Pl.'s Mot. ("NYCHA's Suppl. Opp.") (Dkt. 62); *see also* Pl.'s Proposed Second Am. Compl. ("Proposed Compl.") (Dkt. 60-3).)

Having considered the parties' briefings and oral argument, the court GRANTS Plaintiff's motion.

I.  BACKGROUND

  A.  Factual Background[1]

On November 30, 1994, a woman was stabbed to death outside an apartment complex in Queens, New York. (Am. Compl. ¶ 26.) Because the murder occurred on property owned by NYCHA, police officers with the now-defunct Housing Authority Police Department ("HAPD") began a joint investigation with the New York City Police Department ("NYPD") to identify the assailant.[2] (*Id.* ¶ 31.) They identified Mr. Kendrick. (*Id.* ¶ 61.)

After HAPD detectives identified their suspect, they began an investigation. The tactics used to investigate Mr. Kendrick included pressuring 10- and 18-year-old boys to falsely identify Mr. Kendrick, planting evidence in Mr. Kendrick's apartment, a suggestive line-up, and preparing false and misleading police reports, witness statements, and other evidence. (*Id.* ¶¶ 5, 92-119.) At that time, such tactics were rampant in the NYPD and HAPD, as memorialized in numerous judicial decisions, government reports, and the 2010 book of one HAPD-investigator-turned-NYPD-officer, Michael Codella (the "Codella Book"). (*Id.* ¶¶ 6, 303-05, 316.) Based on evidence gathered during the investigation, Mr. Kendrick was convicted of the murder on September 29, 1995. (*Id.* ¶ 218.)

---

[1] This Memorandum and Order draws on facts from Plaintiff's first amended complaint (the "Complaint"). (*See generally* Am. Compl. (Dkt. 21).) The court will distinguish between facts presented in the Complaint and those added in the Proposed Complaint.

[2] From the HAPD's inception in 1952 to 1995 when it merged into the NYPD, HAPD and NYPD officers trained together at the New York City Police Academy, frequently worked together on investigations, and followed similar protocols, customs, and procedures in investigating felonies, including homicides. (*Id.* ¶ 32.) Such was the case when HAPD and NYPD officers investigated Mr. Kendrick. (*Id.* ¶¶ 33-34, 314.)

Mr. Kendrick's 26-year incarceration came to an end in 2020 when then-Justice Joseph Zayas vacated his conviction and ordered his release. (*Id.* ¶¶ 220-49.) Granting the Queens County District Attorney's motion to vacate Mr. Kendrick's conviction, Justice Zayas concluded that the conviction was a "monumental" "miscarriage of justice"; a "travesty" and "terrible wrong" that took "way too long to discover." (*Id.* ¶¶ 237, 243-44.)

In November 2020, Mr. Kendrick was exonerated and released. (*Id.* ¶ 239.) In January 2022, he died. (*Id.* ¶ 251.)

### B. Procedural Background

As mentioned, Plaintiff commenced this action in January 2023. It then filed an amended complaint as a matter of course on April 14, 2023 (the "Complaint"). (*See generally id.*) The parties began settlement negotiations shortly thereafter. (*See* Min. Entry Dated 7/24/2023.)

Those negotiations were successful—to a point. Plaintiff settled its claims with then-defendants the City of New York; former Queens County Assistant District Attorneys Lori Ann Fee and John Orlando; former NYPD Detectives Brian Dubecky and James Maguire; and former HAPD Detectives Thomas Deutsch, Richard DeFilippis, and John Reynolds.[3] (*See* Stip. of Settlement (Dkt. 44).) On September 9, 2024, these defendants were dismissed from the case with prejudice. (Stip. & Order of Dismissal (Dkt. 45).)

Plaintiff and NYCHA continued settlement discussions. Then, on December 13, 2025, NYCHA requested leave to file a motion for

---

[3] As Maguire and Reynolds were deceased at the time of filing, the action was brought against their respective estates. (*See id.* at 1.) The Complaint incorrectly identifies Deutsch as an "NYPD detective." (*See id.* ¶ 33. *But see id.* ¶ 22 (alleging Deutsch "was at all relevant times a detective employed by NYCHA").) The Proposed Complaint would correctly identify Deutsch as a former HAPD detective. (*See, e.g.,* Proposed Compl. ¶¶ 46, 55, 69.)

judgment on the pleadings. (NYCHA's Premotion Conf. Letter (Dkt. 46) at 2.) In its request, NYCHA announced its intent to seek dismissal of Plaintiff's *Monell* claim and remand of Plaintiff's state claims to state court. (*Id.*) On January 1, 2025, the court set a briefing schedule on NYCHA's motion. (*See* Min. Entry Dated 1/15/2025.)

On February 28, 2025, Plaintiff requested leave to file a motion to amend its complaint before briefing NYCHA's motion. (Pl.'s Mot. for Leave to File Mot. to Am. Compl. ("Pl.'s Filing Request") (Dkt. 51).) The court adjourned all deadlines on NYCHA's motion *sine die* and set a briefing schedule on Plaintiff's motion for leave to amend—the motion at issue here.[4] (Text Order Dated 2/28/2025; Text Order Dated 4/18/2025.)

## II. LEGAL STANDARD

Any analysis of Plaintiff's motion must "[b]egin from the beginning: The plaintiff is 'the master of the complaint,' and therefore controls much about [its] suit." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987)). The plaintiff "gets to determine which substantive claims to bring against which defendants. And in so doing, [the plaintiff] can establish—or not—the basis for a federal court's subject-matter jurisdiction." *Id.* Importantly, a plaintiff's "control" over these matters extends "beyond the time [its] first complaint is filed," and includes subsequently amended pleadings. *See id.*

Federal Rule of Civil Procedure 15(a)(2) provides that "after a party amends its complaint once as a matter of course, it 'may amend its pleading on subsequent occasions only with the opposing party's written consent or the court's leave.'" *McCracken v.*

---

[4] The court heard oral argument on Plaintiff's motion on June 23, 2025. (*See* Min. Entry Dated 6/23/2025.)

4

*Verisma Sys., Inc.*, 91 F.4th 600, 609 (2d Cir. 2024) (quoting Fed. R. Civ. P. 15(a)(2)).[5] "The court should freely give leave when justice so requires." *Id.* (quoting Fed. R. Civ. P. 15(a)(2)). This "permissive standard . . . is consistent with [the] strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

The grant or denial of leave to amend rests squarely "within the discretion of the [d]istrict [c]ourt." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[A] district court may decline to grant such leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Miller v. United States ex rel. Miller*, 110 F.4th 533, 550 (2d Cir. 2024). However, leave to amend "must" be given freely absent evidence of either the movant's "bad faith" or "undue prejudice to the opposing party." *See Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000) (citing *Foman*, 371 U.S. at 182); *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.").

### III. DISCUSSION

Pursuant to Rule 15(a)(2), the court grants Plaintiff's motion because NYCHA fails to show prejudice or bad faith.

Plaintiff requests leave to amend in response to arguments raised by NYCHA in support of its anticipated motion for judgment on the pleadings. (*See* Pl.'s Mot. at 1-2; *see also* Tr. of Oral Arg. ("Oral Arg.") (Dkt. 72) at 2:17-21 ("We decided to amend [our] complaint in response to NYCHA announcing nearly two years after this case had been filed that it would be moving for judgment on

---

[5] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

5

the pleadings as to [P]laintiff's sole federal claim under *Monell*.").) In brief, Plaintiff proposes three amendments: (1) to add allegations in support of diversity jurisdiction; (2) to remove allegations against the now-former defendants; and (3) to add factual allegations in support of its *Monell* claim against NYCHA. (*See* Pl.'s Mot. at 1-2; *see also* Oral Arg. at 2:17-3:05, 3:14-23 (explaining the three amendments).)

NYCHA opposes each amendment. (*See generally* NYCHA's Opp.) It argues that the amendments "will require additional discovery, cause significant delay, and also prejudice the defendant." (Oral Arg. at 27:10-12.)

For the reasons discussed below, the court grants Plaintiff's motion.

### A. Amendment 1: New Allegations in Support of Diversity Jurisdiction

Plaintiff seeks to "add[] allegations in support of diversity jurisdiction." (Pl.'s Mot. at 1.) These allegations state that the court "has diversity jurisdiction under 28 U.S.C[.] § 1332" and establish that Plaintiff and NYCHA are citizens of different states. (Proposed Compl. ¶¶ 11-32.) Plaintiff explains that it "decided to add these allegations in December 2024, upon learning that NYCHA would be moving for judgment on the pleadings . . . as to Plaintiff's *Monell* claim and that, should the *Monell* claim be dismissed, NYCHA would seek to remove this action to state court." (Pl.'s Mot. at 1.)

NYCHA opposes the amendment, arguing that it "is late and also irrelevant." (NYCHA's Opp. at 8.) These arguments are unavailing.

*First*, NYCHA fails to establish prejudice or bad faith by arguing that the amendment is "late." (*Id.*) Simple delay, without more, "does not provide a basis for a district court to deny the right to amend." *See State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843,

856 (2d Cir. 1981); *see also Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) ("Mere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend."). Rather, in this context, "[u]ndue prejudice" arises "when an amendment comes on the eve of trial and would result in new problems of proof." *Ruotolo*, 514 F.3d at 192. Here, "no trial date ha[s] been set . . . and no motion for summary judgment ha[s] yet been filed." *See Fluor Corp.*, 654 F.2d at 856. Therefore, NYCHA fails to show prejudice. (*See* NYCHA's Opp. at 8.)

NYCHA also fails to establish Plaintiff's "bad faith" in proposing the amendment now. *See Ruotolo*, 514 F.3d at 191. It is undisputed that NYCHA, a citizen of New York, and Plaintiff, a citizen of Georgia, are "diverse parties." *See* 28 U.S.C. § 1332(c)(1)-(2). Therefore, at this stage in the case, the existence of complete diversity is not in doubt. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 88-89 (2005) (concluding removal was proper because the requisite complete diversity existed between plaintiffs, who were individual citizens of Virginia, and defendant, who was a corporation chartered in and had its principal place of business in Texas). Plaintiff also provides a reasonable explanation for the timing of the amendment: it seeks to establish diversity jurisdiction in response to NYCHA's announcement—made two years after the commencement of this case—that it intends to challenge Plaintiff's sole federal claim and seek removal of this action to state court. (*See* Pl.'s Mot. at 2-3.) Indeed, Plaintiff informed the court and NYCHA that it intended to add these allegations immediately after NYCHA made its intentions known. (*See* Pl.'s Filing Request at 1-2.) For these reasons, NYCHA fails to establish prejudice or bad faith. Thus, the timing of the amendment is not a basis to deny Plaintiff's motion.

*Second*, NYCHA's argument that the amendment is "irrelevant" is without merit. (NYCHA's Opp. at 8.) The plaintiff is the "master

of the complaint." *See Wullschleger*, 604 U.S. at 35. As such, the plaintiff gets to establish the basis for the court's subject-matter jurisdiction. *Id.* Consequently, the plaintiff—not the defendant—chooses the forum in which its claims will be litigated. *Williams*, 482 U.S. at 399 ("If a defendant could do so, the plaintiff would be master of nothing."). Having selected a federal forum, Plaintiff is entitled to assert a separate basis for the court's jurisdiction—particularly after NYCHA has raised its intention to challenge Plaintiff's sole federal law claim in hopes of stripping this court of jurisdiction. *See Foman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [it] ought to be afforded an opportunity to test [its] claim on the merits.").

For these reasons, the court grants Plaintiff's motion for leave to amend to add allegations in support of diversity jurisdiction.

### B. Amendment 2: Removal of References to and Factual Allegations Concerning Former Defendants

Plaintiff seeks to remove "references to, and some now extraneous factual allegations concerning, the defendants who have been dismissed from the case." (Pl.'s Mot. at 1-2.) As a result, the amendment also includes the removal of the causes of actions against the former defendants. (*Compare* Am. Compl. ¶¶ 252-591 (asserting eight causes of action, only three against NYCHA), *with* Proposed Compl. ¶¶ 203-361 (asserting three causes of action, all against NYCHA).) Plaintiff states that the amendment is warranted given changed circumstances—namely, the dismissal of all Defendants except NYCHA and NYCHA's motion for judgment on the pleadings. (Pl.'s Mot. at 3 (adding that in anticipation of NYCHA's motion, the amendment "serves to simplify and sharpen [the] complaint and remove now-irrelevant factual issues").)

NYCHA opposes the amendment. It argues that the amendment amounts to Plaintiff's "attempt to improperly 'un-admit' facts that [P]laintiff used as leverage to obtain settlement from former defendants." (NYCHA's Opp. at 3.) Specifically, NYCHA argues that the removal of so-called "judicial admissions" regarding the former defendants will "cause prejudice" because: (1) NYCHA "may have to seek to prove"—including "through substantial additional discovery"—"allegations of culpability against these parties," (*id.*); (2) "the status of those admissions becomes an issue that could cause confusion, potential further litigation[,] and significant prejudice to the defense," (*id.* at 4); and (3) the amendment "improperly change[s] the nature of the case" by "shift[ing] a lot of liability onto [NYCHA] for things that [it] had nothing to do with," (Oral Arg. at 5:15-25, 6:10-12.). Each of these arguments fails to persuade.

*First*, NYCHA cannot show prejudice by asserting hypothetical risks associated with potential additional discovery. Bare "complaints of the time, effort and money" preparing for trial do not "constitute prejudice sufficient to warrant denial of leave to amend." *See Pasternack*, 863 F.3d at 174 (citing *Fluor Corp.*, 654 F.2d at 856). To the extent that NYCHA raises concerns about the potential additional resources it "may" need to expend, it does not specify why deleting references to former defendants would unnecessarily prolong discovery or require additional resources. (*See* NYCHA's Opp. at 3.) This action is still at the discovery stage. (*See* Text Order Dated 8/1/2025 (ordering the close of fact discovery by January 30, 2026).) NYCHA retains the right to answer the Proposed Complaint and may put any defenses in its answer. Furthermore, Plaintiff provides a reasonable explanation for the amendment—the "obvious explanation" being that the former defendants have settled and they (as well as the claims against them) have been dismissed from this case with prejudice. (*See* Pl.'s Mot. at 3-4.) Thus, NYCHA's argument that "the additional discovery alone would be potentially protracted

9

and cause prejudice" is not sufficient to deny Plaintiff's motion, particularly where Plaintiff has provided a reasonable explanation for the amendment. (NYCHA's Opp. at 3.) *See Foman*, 371 U.S. at 182; *see also S.S. Silberblatt, Inc. v. E. Harlem Pilot Block—Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979) (concluding additional time to conduct discovery "is insufficient prejudice to deny leave to amend, particularly when trial has not yet commenced and is not likely to do so for some time").

*Second*, NYCHA cannot show prejudice by pointing to hypothetical evidentiary disputes that may arise should this case go to trial. (NYCHA's Opp. at 4.) As NYCHA concedes, the "admissibility of admissions in the pleadings . . . is not the issue currently before the court" and arguments regarding admissibility are not appropriate at this time. (NYCHA's Suppl. Opp. at 1.) Therefore, the admissibility of certain allegations made in the Complaint but removed from the Proposed Complaint is not a proper basis for denying Plaintiff's motion.

*Third*, NYCHA cannot show prejudice based on its claim that the amendment "improperly change[s] the nature of the case." (Oral Arg. at 5:15-25). NYCHA argues that the amendment either "completely remove[s]" an allegation against a former defendant or "shift[s] allegations of culpability which had been against the other parties to [NYCHA]." (NYCHA's Opp. at 5 n.4.) The five causes of action brought solely against the former defendants have been dismissed from this case with prejudice. Consequently, it cannot "change the nature of the case" for Plaintiff to formally remove these claims from its complaint.[6] With or without the

---

[6] NYCHA challenges the removal of factual allegations in support of Plaintiff's claims against former defendants the City of New York and former Assistant District Attorney Quinn, based on Quinn's alleged conduct prior to and during Mr. Kendrick's trial, and in the office's initial reexamination of Mr. Kendrick's case. (*See* NYCHA's Opp. at 5 n.4 (citing Am. Compl.

amendment, three causes of action remain—and all solely against NYCHA. The removal of allegations against any one of the former defendants does not change that fact. Thus, to the extent that the amendment "completely removes" allegations against the former defendants, it does not change the nature of the case as it exists today. (NYCHA's Opp. at 5 n.4.)

Similarly, NYCHA's claim that the amendment "shift[s] a lot of liability onto [NYCHA] for things that [NYCHA] had nothing to do with" by purportedly "[setting] forth new allegations against NYCHA" is without merit. (Oral Arg. at 6:10-12; NYCHA's Opp. at 5.) The examples NYCHA cites in support of this argument show that NYCHA both misinterprets the allegations against it in the Complaint and mischaracterizes the allegations in the proposed amendment. For example, NYCHA argues that the removal of allegations regarding the participation of former defendants Fee and Dubecky in the suggestive lineup, moves "all the blame . . . squarely on NYCHA." (NYCHA's Opp. at 5 n.4; Oral Arg. at 6:04-7:05.) Not so. The Complaint's allegations against NYCHA focus on *its* alleged responsibility based on *its* role in the suggestive lineup—a lineup "conducted" by HAPD officers. (*See* Am. Compl. ¶ 95.) So too do the allegations in the Proposed Complaint. (*See* Proposed Compl. ¶ 108.) Here, Plaintiff's claim turns on HAPD officers' conduct during the lineup and NYCHA's policies and practices regarding lineups—not on the participation or

---

¶¶ 159-81, 182-95, 226-30, 242).) These allegations are extraneous to Plaintiff's claims against NYCHA because they solely involve alleged conduct by, and solely support causes of action against, former defendants. The same is true for NYCHA's challenge of the removal of an allegation of what "was or should have been known to NYPD policymakers" about the alleged misconduct of former NYPD officer Louis Scarcella, and the removal of Plaintiff's Section 1983 claim against the City of New York based on the policies, practices, and customs of the Queens County District Attorney's Office. (*Id.* (citing Am. Compl. ¶¶ 357, 436-588).)

presence of other city officials. (*See* Oral Arg. at 7:19-23 (explaining that the Proposed Complaint alleges that "while an ADA was present for the line-up, [HAPD] police were the ones that conducted the line-up"); Proposed Compl. ¶¶ 116, 120 (alleging that "HAPD Detective Deutsch and others" were present at and participated in the lineup).) NYCHA's additional argument that through the amendment Plaintiff has "scrubbed" former defendant Dubecky from the Complaint is erroneous: the Proposed Complaint includes various allegations that refer to Dubecky's alleged misconduct prior to, during, and after the lineup—including references to Dubecky by name. (*See, e.g.,* Proposed Compl. ¶¶ 105-07 (describing Dubecky's misconduct prior to the lineup), 116-17 (alleging detectives "unlawfully and unfairly influenced Rogers to identify Mr. Kendrick"), 120-26 (alleging improper discussion of the Lineup Report, and detectives' conduct leading to Rogers' false identification).)

In sum, NYCHA fails to show that the amendment will prejudice its defense because Plaintiff—who has settled with everybody else—merely seeks to amend the Complaint to reflect the case at its current stage and to focus on NYCHA. Plaintiff's explanation for the amendment is reasonable given NYCHA's anticipated motion for judgment on the pleadings. Therefore, the court grants Plaintiff's motion for leave to amend to remove references to and factual allegations concerning the former defendants.

### C. Amendment 3: Additional Allegations in Support of Plaintiff's *Monell* Claim

Plaintiff seeks to add "allegations in support of the *Monell* claim" against NYCHA. (Pl.'s Mot. at 2.) Plaintiff asserts that the amendment is in direct response to and seeks to "strengthen" the Complaint in advance of NYCHA's anticipated motion attacking this claim. (*See id.; see also* Oral Arg. at 2:25-3:05, 3:14-18 (same).) According to Plaintiff, the amendment consists of three

12

categories: (1) a new allegation to "clarify the constitutional violations that underlie the *Monell* claim" ("Category 1"); (2) new allegations to "state more directly that, due to the close collaborative relationship between [NYPD] and NYCHA officers, known misconduct by NYPD officers put NYCHA policymakers on notice of the need to more adequately supervise and discipline NYCHA officers" ("Category 2"); and (3) "several paragraphs containing additional facts, supportive of Plaintiff's *Monell* claim, drawn from [the Codella Book]" ("Category 3"). (*Id.* (citations in original briefing removed).)

NYCHA opposes each category of the amendment. (*See* NYCHA's Opp. at 5-8.) Each of its arguments fail for the reasons explained below.

1. Category 1

Plaintiff seeks to add a new allegation to "clarify the constitutional violations" that form the basis for its *Monell* claim. (Pl.'s Mot. at 2 (citing Proposed Compl. ¶ 210).) NYCHA opposes the amendment, arguing that it consists of improper "allegations of policies or conduct that [were] not part of the original complaint and would not have been anticipated by the defendant through the initial complaint." (NYCHA's Opp. at 5.)

NYCHA's argument is unavailing. In opposing a motion for leave to amend, the nonmovant cannot claim "prejudice" when it was on notice of issues raised in the amendment. *See Slayton v. Am. Exp. Co.*, 460 F.3d 215, 229 (2d Cir. 2006). Such is the case where "the amended complaint does not allege a new claim but renders prior allegations more definite and precise." *Id.*

Here, the amendment is limited to one paragraph in support of Plaintiff's *Monell* claim. (*Compare* Am. Compl. ¶ 300, *with* Proposed Compl. ¶ 210.) In full, the amendment seeks to clarify that

NYCHA's policies did not adequately address: (i) "the manufacturing or fabrication of . . . evidence"; (ii) certain pretrial *Brady* obligations; and (iii) "[t]he duty of police officers not to make false sworn statements or give false sworn testimony, including during judicial proceedings." (Proposed Compl. ¶ 210(b), (d), (e).) These allegations are apparent from the allegations in the Complaint. (*See* Am. Compl. ¶¶ 152-53 (alleging withholding of *Brady* material from the arraignment court, including by "police"), 192-205 (alleging false testimony, including by former HAPD Detective Deutsch), 261 (alleging fabrication and manufacturing of false evidence, including sworn HAPD reports), 300(b) & (d) (alleging NYCHA's policies did not adequately address "the manufacturing of false or highly unreliable identification evidence" or "[t]he duty of police detectives and investigators to preserve and [disclose] . . . *Brady* material").) Thus, contrary to NYCHA's assertion, the "new" allegations were, in fact, "part of" and could "have been anticipated by the defendant through" the Complaint. (NYCHA's Opp. at 5.) Therefore, NYCHA cannot show prejudice because it had adequate notice. *See Slayton*, 460 F.3d at 229; *Monahan*, 214 F.3d at 284. Consequently, the court grants Plaintiff's motion for leave to amend to add a new allegation that clarifies the constitutional violations on which its *Monell* claim is based.

    2. Category 2

Plaintiff seeks to amend the Complaint to "more directly" state its theory of liability that NYCHA had "notice of the need to more adequately supervise and discipline NYCHA officers," in part, "due to the close collaborative relationship between [NYPD] and NYCHA officers" and "known misconduct by NYPD officers." (*See* Pl.'s Mot. at 2 (citing Proposed Compl. ¶¶ 212, 224, 256, 285, 352).)

NYCHA opposes the amendment, arguing that it amounts to Plaintiff's attempt to "create[]" a "novel" theory of *Monell* liability. (*See* NYCHA's Opp. at 6.) NYCHA further argues that "even if" Plaintiff's *Monell* claim is cognizable, the amendment results in prejudice because it "fundamentally changes the context of the case" and will require NYCHA to engage in additional discovery. (*Id.*) For the following reasons, NYCHA's arguments fail to persuade.

*First,* the examples that NYCHA says illustrate that the amendment raises a new theory of liability and thereby "fundamentally changes the context of the case" do not do so. (*Id.* at 5-6 (citing Proposed Compl. ¶¶ 211, 212, 256, 285).) Plaintiff's *Monell* claim alleges that NYCHA is "liable for the misconduct of HAPD detectives which caused Mr. Kendrick's wrongful prosecution and conviction and all his resultant damages," because its "policies, procedures, regulations, practices, and/or customs" were a "substantial factor in bringing about" these HAPD detectives' violations of Mr. Kendrick's constitutional rights. (*See* Am. Compl. ¶¶ 434-35.) Plaintiff alleges the same theory of liability in the Proposed Complaint verbatim. (*See* Proposed Compl. ¶¶ 357-58.)

Furthermore, Plaintiff raised each of the challenged allegations in the Complaint.[7] Take for example the challenged allegations in paragraphs 211 and 212 that NYPD and HAPD officers were "trained together," "assigned . . . to collaborate on investigations," and "worked together frequently and followed similar practices when investigating crimes." (*See* NYCHA's Opp. at 5 (citing Proposed Compl. ¶¶ 211, 212).) In the Complaint, Plaintiff alleged that "NYPD and HAPD detectives were trained together and frequently collaborated on investigations" and that

---

[7] The same is true of the unchallenged allegations. (*Compare* Proposed Compl. ¶¶ 224 and 352, *with* Am. Compl. ¶¶ 312 and 314.)

"NYPD and HAPD officers followed similar practices when investigating crimes" (including in the investigation of Mr. Kendrick). (Am. Compl. ¶¶ 31-34, 314.) Therefore, paragraphs 211 and 212 do not amount to "new" allegations. Nor do they raise "new" legal theories. The same is true of paragraph 256, which merely combines and rewords the allegations in paragraphs 312 to 314 of the Complaint. (*Compare* Proposed Compl. ¶ 256, *with* Am. Compl. ¶¶ 312-14.) Likewise, NYCHA cannot argue that paragraph 256 presents a "novel theory of *Monell* liability" because the closeness of the relationship between NYPD, NYCHA, and their respective officers is also alleged throughout the Complaint. (NYCHA's Opp. at 6; *see, e.g.,* Am. Compl. ¶¶ 31-34, 312-14). The same goes for the challenged allegation in paragraph 285.[8] (*See* NYCHA's Opp. at 6 (citing Proposed Compl. ¶ 285).) Accordingly, NYCHA's argument that Plaintiff "waited until the other parties settled before making this attempt to try and essentially impute the conduct of the NYPD onto the HAPD" fails to persuade. (*Id.* at 7.)

In sum, Plaintiff raised each of the challenged allegations in the Complaint. Each allegation "does not allege a new claim but renders [Plaintiff's] prior allegations" in support of its *Monell* claim "more definite and precise."[9] *Slayton*, 460 F.3d at 229. Thus, NYCHA cannot claim to be "unfairly surprised" by the issues raised

---

[8] Alternatively, this allegation is a reasonable inference made from allegations in the Complaint emphasizing the close relationship between the NYPD, NYCHA, and their officers. (*See, e.g.,* Am. Compl. ¶¶ 31-34, 312-14.)

[9] The same is true of the challenged allegations in paragraphs 215(a), 342, and 352. (NYCHA's Opp. at 7 n.5 (citing Proposed Compl. ¶¶ 215(a), 342, 352).) These paragraphs merely restate allegations brought in the Complaint. (*See* Am. Compl. ¶¶ 5-6 (alleging various "corrupt tactics ... occurred with impunity in the 1980s and 1990s at the [NYPD] and [HAPD]"), 303 (alleging NYCHA's policymaking officials had "knowledge

in the amendment and cannot show prejudice. *See Monahan*, 214 F.3d at 284.

*Second,* for reasons already explained NYCHA cannot claim prejudice based on potential, additional discovery. *See* Part III.B *supra*. The same reasons aptly apply here where NYCHA fails to specify how it will be prejudiced by "potential[]" additional discovery regarding allegations of which it had prior notice. (*See* NYCHA's Opp. at 7.)

For the above reasons, the court grants Plaintiff's motion for leave to amend to more directly state its theory of *Monell* liability.

### 3. Category 3

Plaintiff seeks to "add several paragraphs containing additional facts" drawn from the Codella Book. (Pl.'s Mot. at 2. (citing Proposed Compl. ¶¶ 226-40).) Opposing this amendment, NYCHA argues that: (1) the amendment consists of "irrelevant, improper new allegations, and/or an attempt to reverse the meaning of the allegations as framed in the [Complaint]"; and (2) that the new allegations are "based on inadmissible hearsay from a book and so are improper and should not be permitted." (NYCHA's Opp. at 8.) Plaintiff counters that "[t]he only" reason it seeks to add these allegations is to "rely on these facts in response to" NYCHA's anticipated motion for judgment on the pleadings. (*See* Oral Arg. at 14:21-23.)

The court finds NYCHA's arguments unpersuasive and Plaintiff's explanation for the amendment reasonable.

---

and notice" based on numerous sources documenting detectives' misconduct).) They also clarify the same theory of NYCHA's liability advanced in the Complaint. (*Compare* Proposed Compl. ¶¶ 357-58, *with* Am. Compl. ¶¶ 434-35.)

*First*, NYCHA cannot show prejudice because the issues in the amendment cannot be said to "unfairly surprise[]" the defense. *See Monahan*, 214 F.3d at 284. As NYCHA concedes, Plaintiff quoted the Codella Book in prior versions of its complaint. (NYCHA's Opp. at 7.) The defense knew about the book and its contents. (*See* Oral Arg. at 15:15-16 ("We knew [Codella] wrote this book but these allegations were not put in the original complaint.").) Furthermore, NYCHA's claim that aspects of the amendment "reverse the meaning" of prior allegations fails. (*See* NYCHA's Opp. at 7-8 (citing Proposed Compl. ¶¶ 232-40).) Paragraphs 232 through 240 describe how HAPD investigators knew about Codella's misconduct prior to Mr. Kendrick's prosecution. (*See* Proposed Compl. ¶¶ 232-40.) Plaintiff made the same allegation in the Complaint. (*See, e.g.*, Am. Compl. ¶ 315.) Therefore, NYCHA cannot claim prejudice because the amendment does "not allege a new claim but renders [Plaintiff's] prior allegations more definite and precise." *See Slayton*, 460 F.3d at 229.

*Second*, NYCHA's argument regarding the admissibility of certain statements from the Codella Book is without merit. (*See* NYCHA's Opp. at 8.) As NYCHA concedes, admissibility is an issue for trial. (*See* NYCHA's Suppl. Opp. at 1, 4.) This argument has no bearing on whether the amendment may prejudice NYCHA now. Therefore, it provides no basis on which to deny Plaintiff's motion.[10]

For these reasons, the court grants Plaintiff's motion for leave to amend to add allegations from the Codella Book.

---

[10] To the extent NYCHA's admissibility arguments invite this court to rule on the merits of Plaintiff's *Monell* claim, that invitation is declined. The time to rule on the validity of the *Monell* claim is at the end of discovery. Although a nonmovant's futility claim *may* provide a proper basis to deny leave to amend, it does not *compel* the court to take such action. The decision to grant Plaintiff's motion is squarely and properly within the court's discretion. *See Foman*, 371 U.S. at 182; *Miller*, 110 F.4th at 550; *Monahan*, 214 F.3d at 283.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiff's motion for leave to file a second amended complaint. The court DIRECTS Plaintiff to file its amended complaint within seven days of the entry of this Memorandum and Order. In light of this ruling, NY-CHA is DIRECTED to advise the court whether it intends to proceed with its previously requested motion for judgment on the pleadings within 21 days of the entry of this Memorandum and Order. (*See* Text Order Dated 2/28/2025.)

SO ORDERED.

Dated:   Brooklyn, New York
         December 12, 2025

                                             s/Nicholas G. Garaufis
                                             _____
                                             NICHOLAS G. GARAUFIS
                                             United States District Judge