# LAW OFFICES OF JOEL B. RUDIN, P.C.

CARNEGIE HALL TOWER

152 WEST 57TH STREET

EIGHTH FLOOR

NEW YORK, NEW YORK 10019

TELEPHONE: (212) 752-7600
FACSIMILE: (212) 980-2968
E-MAIL: jbrudin@rudinlaw.com

JOEL B. RUDIN

DAVID E. RUDIN
SAM THYPIN-BERMEO
SAM KUHN
PARTHA SHARMA

JACOB "COBY" LOUP
DAVID S. KEENAN
(OF COUNSEL)
AMARIAH THURSTON
(PARALEGAL)

June 5, 2026

**By ECF**
Honorable Taryn A. Merkl
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: *Estate of Jaythan Kendrick v. New York City Housing Authority,*
> No. 23-cv-358 (NGG) (TAM)

Dear Judge Merkl:

Our firm represents Plaintiff Estate of Jaythan Kendrick in the above-referenced § 1983 action. In accordance with the Court's order of May 27, 2026, I write jointly with counsel for Defendant NYCHA regarding the parties' discovery dispute concerning NYCHA's search for documents and information pertaining to lawsuits and settlements; the deadline for Defendants' responsive expert disclosure; a proposed timeline for the completion of final expert discovery steps; a deadline for the initiation of dispositive motions and/or the Joint Pretrial Order; and the confidentiality of small portions of the deposition testimony of Clarence Hughes, a co-executor of the Estate. The parties have met-and-conferred but have been unable to resolve their disputes.

### 1. Plaintiff Seeks Dates of NYCHA HAPD Lawsuit Payouts

On November 26, 2025, Plaintiff sought discovery concerning payout amounts in civil lawsuits against Defendant and/or its individual police officers for misconduct similar to that suffered by the late Jaythan Kendrick. *See* Dkt. 86-2 (Plaintiff's Second Set of Interrogatories and Document Requests). Plaintiff sought this information both through interrogatories and an accompanying document request seeking "[a]ll documents that provide any of the information requested" in the interrogatories. *Id.* at 10. On May 21, 2026, after months of denying that NYCHA maintained any records of settlement payouts,[1] NYCHA produced payout amounts for 68 lawsuits, but did not state the dates of these payouts. *See* Dkt. 88-1. In a phone call that day, NYCHA's counsel, Joel Ray, informed us that the payouts were obtained from a computer

---

[1] These false representations were made repeatedly in phone calls with Plaintiff's counsel, as well as through a January 23 formal discovery response and a March 19 sworn affidavit by NYCHA's Chief Records Officer communicating that NYCHA largely lacked responsive documents and information. Ex. 1 (discovery response dated Jan. 23, 2026) at 3–8; Dkt. 86–3 (affidavit of Alan Wong dated Mar. 19, 2026).

program but that this program did not contain dates, and there was no way to export its data. On May 22, Mr. Ray refused to include this information in NYCHA's promised affidavit concerning its search for responsive records. On May 28, NYCHA produced the affidavit, sworn to by its Director of Risk Management, which stated that she had obtained settlement data from an actuarial report and a computer system called Legal Stratus, but was silent on the issue of dates and export functionality. *See* Ex. 2. On May 29, we held a meet-and-confer with NYCHA to attempt to resolve this dispute, where Mr. Ray maintained his position that NYCHA's computer program does not have dates. Then, earlier today, in response to a draft of this letter to the Court, Mr. Ray revealed that NYCHA's Legal Stratus system *does* in fact have dates, but provides no explanation for what he terms a "mistake" on his part. NYCHA still, however, refuses to produce the dates.

NYCHA repeats its prior argument that settlement payments generally are irrelevant and thus not discoverable, but this argument was rejected by the Court at the April 21 teleconference in this matter, following which the Court issued a minute order requiring NYCHA to "conduct a search for documents regarding the list of lawsuits and settlements that is not limited to a search of the litigation files only." Minute Entry and Order, Apr. 21, 2026. The dates of the settlements are specifically relevant to the issue of NYCHA policymakers' notice, at the time of Mr. Kendrick's 1994 arrest, to the need for supervision and discipline. *See generally Connick v. Thompson*, 565 U.S. 51, 62 (2011) ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights"); *id.* at 63 n.7 ("contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates" (cleaned up)).

Regrettably, NYCHA's repeated denials that it possesses lawsuit settlement data, followed by its repeated denials that it possesses payout dates, are not its first incorrect statements in response to Plaintiff's discovery requests in this litigation. In response to Plaintiff's October 2024 document demands for material related to Plaintiff's *Monell* claim against NYCHA—e.g., material concerning the organizational structure and leadership of the HAPD, lawsuits against HAPD officers, HAPD training and disciplinary policies, and the nature of the HAPD's relationship with the NYPD—NYCHA stated that it had no responsive documents. This statement turned out to be false. After overcoming NYCHA's efforts to obstruct Plaintiff's access to its archives, Plaintiff discovered material plainly relevant to Plaintiff's *Monell* claim against NYCHA, including documents bearing upon the HAPD's relationship and coordination with the NYPD, disciplinary policy, and training. Plaintiff even found specific documents that Plaintiff directly requested in October 2024 and that NYCHA denied it possessed: a report NYCHA commissioned to study the function of the HAPD in 1992, two years before HAPD arrested and investigated Mr. Kendrick; HAPD organizational charts; and HAPD patrol guides. On January 9, 2025, in response to Plaintiff's October 29, 2024 discovery requests, NYCHA had represented that it did not have the 1992 report, the organizational charts, or HAPD training materials in its possession. Then, in affidavits dated March 6 and March 7, 2025, NYCHA's investigators falsely

asserted there were no documents *at all* in the archives responsive to Plaintiff's document requests.

NYCHA's pattern of repeatedly making false representations in discovery has caused protracted delays in this litigation and should not be condoned. NYCHA should be ordered to produce dates of payouts in its possession forthwith.

*Defendant's Position*

As Your Honor correctly pointed out in her order of May 27, 2026, Defendant is not required to create documents responsive to Plaintiff's demand. *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923 (DRH) (AKT), 2017 WL 1233842, at *12 (E.D.N.Y. Mar. 31, 2017). Plaintiff seeks documents that back up the settlement information located by Defendant in two databases. As previously explained and discussed with Plaintiff's counsel, the information does not exist in any tangible form. The information exists in databases that do not have an export function. Therefore, Defendants will be creating documents to respond which it should not do. No further affidavit is necessary to state that there is no export function. Ms. Orenstein's affidavit more than satisfies the requirements for such an affidavit because it shows what was done and what was found which is all that is required. *Jackson v. City of New York*, 185 A.D.2d 768 (1st Dept 1992).

With regards to dates of settlement payment, I, Joel Ray, Esq., see that upon further review I was actually mistaken when preparing Defendant's portion of this letter. My mistake is in no way a reflection of Defendant or Defendant's attempt to withhold information or attempted to delay, despite Plaintiff's argument to the contrary. It was an inadvertent mistake by myself that I did not realize until this morning. Plaintiff also should stop harping on things that happened in the past because it is merely counsel's argument that whatever their expert found was relevant. Defendant position is that the documents found by Plaintiff's expert are wholly irrelevant to the claims in this matter. As to the dates, the Legal Stratus system does have dates for settlement payments. However, Defendant reiterates that settlement payments are irrelevant to the issues in this matter. Settlement is determined on a risk base analysis and is not a reflection of the merits or facts of the matter. The dates of the settlement payments do not reflect what Defendant knew or when, nor does Plaintiff explain such a relationship. Thus, such information should be excluded from production. Further, such settlement payments are required to be made within 90 days of the agreement, as per CPLR §5003-a. Therefore, Defendant should not be required to provide any further information related to settlement payments.

2.      **NYCHA Requests an Extension Until June 19, 2026, to Disclose Its Expert Report**

*Defendant's Position*

Defendant is requesting a short extension of time to allow its expert to complete his review and report. There is a tremendous number of medical records and other documents the expert needs to analyze and complete his report. Further, such short extension is not an inconvenience and will not further delay the action. The request is made after I had a fair and frank discuss with Defendant's expert. This is a realistic time frame for the expert to complete his report and exchange it. This is not an unreasonable request. Based on the request, we suggest that any deposition for the expert should be held on or before Monday, July 20, 2026 (July 19, 2026 is a Sunday).

It is the intention of Defendant to seek a pre-motion conference for dispositive motions at the completion of discovery.

*Plaintiff's Position*

On February 10, 2026, the Court so-ordered the parties' proposed expert discovery schedule. The order set deadlines of March 18, 2026, for Plaintiff's expert disclosures; April 17, 2026, for Defendant's expert disclosures, and May 18, 2026, for the completion of all expert discovery. Plaintiff disclosed its expert report in compliance with the Court's order. By this point, NYCHA had already had Mr. Kendrick's mental health records for months. On April 17, the deadline for NYCHA's expert disclosure, NYCHA asked Plaintiff for an indefinite extension to serve its expert disclosure. The Court subsequently permitted NYCHA 30 days from the date of its deposition of Plaintiff's expert, Dr. Sanford Drob, to serve a responsive expert disclosure. NYCHA deposed Dr. Drob on May 6, making its deadline to serve a responsive expert disclosure June 5. NYCHA now requests another two weeks to make an expert disclosure, extending the 45 days it has already had to respond to Plaintiff's expert disclosure to two months. Plaintiff opposes NYCHA's repeated extension requests that continue to delay this case. Without NYCHA's expert disclosure, Plaintiff is unable to propose a timeline for the completion of expert discovery, as it needs to review any report to determine if a deposition is needed.

As for a timeline for the initiation of dispositive motions and/or the Joint Pretrial Order, Plaintiff notes that Judge Garaufis' February 10, 2026, order directed the parties to submit a request for a pre-motion conference on any dispositive motions upon the completion of discovery.

**3.** **NYCHA Objects to Making Certain Portions of Mr. Hughes' Transcript Confidential**

*Defendant's Position*

Plaintiff on June 2, 2026, made a request to the court reporter who took the deposition of Mr. Clarence Hughes, the administrator for the Mr. Kendrick's estate and nominal plaintiff to make certain portion of the transcript confidential. On June 3, 2026, Defendant objected to the request and a meet and confer was held on June 4, 2026, that did not resolve the issue.

Plaintiff's request seeks to mark certain portions of Mr. Hughes transcript as confidential that do not fall within the confidential agreement, Doc 34-1. According to the confidentiality agreement, Mr. Kendrick medical and mental health records are to be designated as confidential. Yet, the portions of Mr. Hughes testimony to be made confidential do not relate to medical or mental health records. The testimony regards unsubstantiated statements Mr. Hughes was told by Mr. Kendrick regarding serious and harmful instances in prison as well as medical information after he was released. Such testimony is hearsay and is not supported by Mr. Kendrick medical and mental health records. Defendant is mindful of the sensitive of such information and understands that such information is very personal and private, but nonetheless the testimony does not fall within in the purview of the confidentiality agreement because it does not relate to Mr. Kendrick's medical or mental health records. Therefore, we respectfully request a conference with the court to discuss this issue in more depth.

*Plaintiff's Position*

Given the sensitive nature of the deposition testimony at issue, Plaintiff will not discuss it in this public filing in any detail beyond the general description provided by NYCHA, but is, of course, prepared to discuss it at a conference with the Court. Plaintiff's position is that, given the deposition testimony in question described Mr. Kendrick's physical and psychological state, those portions of the testimony fall within the confidentiality provisions of ¶¶ 2(e) and 14 of the July 27, 2023, Stipulation of Confidentiality and Protective Order. Dkt. 36; *see also Vietnam Veterans of Am. v. Dep't of Def.*, 453 F. Supp. 3d 508, 517 (D. Conn. 2020) ("While death may have diminished the privacy interests of deceased veterans, it did not render those interests <u>de minimis</u>, and it does not diminish at all the privacy interests of their survivors"). Defendant's arguments that Mr. Hughes' testimony is hearsay and unsubstantiated are inapposite. The admissibility and reliability of the testimony has nothing to do with whether it falls within the Confidentiality and Protective Order.

We thank the Court for its consideration.

Respectfully submitted,

/s/

Partha Sharma

cc:      All counsel of record (via ECF)